UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NICOLE BENNETT AND<br>MICHAEL RACCIO<br>Plaintiffs, | : <br> : <br> : <br> : | CIVIL CASE NO.<br>3:23-CV-01296 (JCH) |
| v. | : <br> : | |
| METRO-NORTH COMMUTER<br>RAILROAD CO.,<br>KAWASAKI RAIL CAR, INC., AND<br>KATHLEEN HARRINGTON AS<br>ADMINISTRATOR OF THE<br>ESTATE OF SCOTT J. HARRINGTON,<br>Defendants.<br>------------------------------------------------------- | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | NOVEMBER 21, 2024 |
| KAWASAKI RAIL CAR INC.,<br>Third-Party Plaintiff, | : <br> : <br> : | |
| v. | : <br> : | |
| ELLCON-NATIONAL, INC.,<br>FAIVELEY TRANSPORT USA, INC.,<br>FAIVELEY TRANSPORT<br>NORTH AMERICA, INC.,<br>Third-Party Defendants. | : <br> : <br> : <br> : <br> : | |

**RULING ON THE ESTATE'S MOTION TO DISMISS KAWASAKI'S CROSSCLAIMS (DOC. NO. 85), AND THE ESTATE'S MOTION TO DISMISS FAIVELEY'S CROSSCLAIMS (DOC. NO. 101)**

I.   INTRODUCTION

The plaintiffs, Nicole Bennett ("Ms. Bennett") and Michael Raccio ("Mr. Raccio") bring this suit against Metro-North Commuter Railroad Co. ("Metro-North"), Kawasaki Rail Car Inc. ("Kawasaki"), and the Administratrix of the Estate of Scott J. Harrington ("the Estate") asserting federal and state law claims.  Second Amended Complaint (Doc. No. 69) ("Second Am. Compl.").  Kawasaki brings crossclaims against the Estate seeking contribution and indemnification.  Kawasaki's Answer to Second Amended Complaint, Crossclaims (Doc. No. 82) ("Kawasaki Answer").  In its capacity as a third-

1

party plaintiff, Kawasaki brings a suit against third-party defendants, Faiveley Transport North America, Inc. (formerly Ellcon-National, Inc.) and Faiveley Transport USA, Inc. (collectively, "Faiveley"), seeking relief on the basis of contribution, indemnification, and breach of contract.  Third-Party Complaint (Doc. No. 77) ("Third-Party Compl."). Faiveley brings crossclaims against the Estate seeking contribution and indemnification. Faiveley's Answer to Third-Party Complaint, Crossclaims (Doc. No. 95) ("Faiveley's Answer").

Pending before this court is the Estate's Motion to Dismiss Kawasaki's crossclaims, Estate's Memorandum of Law in Support of Motion to Dismiss Kawasaki's Crossclaims (Doc. No. 85) ("Mem. Supp. Re: Kawasaki Crossclaims"), and the Estate's Motion to Dismiss Faiveley's crossclaims.  Estate's Memorandum of Law in Support of Motion to Dismiss Faiveley's Crossclaims (Doc. No. 101) ("Mem. Supp. Re: Faiveley Crossclaims").  Kawasaki and Faiveley oppose the Motions, respectively.  Kawasaki's Memorandum of Law in Opposition to Motion to Dismiss (Doc. No. 96) ("Kawasaki Opp'n"); Faiveley's Memorandum of Law in Opposition to Motion to Dismiss (Doc. No. 102) ("Faiveley's Opp'n").  For the reasons discussed below, the court denies the Motions.

## II.    ALLEGED FACTS[1]

Metro-North operates commuter railcars constructed by Kawasaki.  Second Am. Compl. at ¶¶ 10, 35–36.  The front railcar contains an engineer's cab that includes a window.  See id. at ¶ 59.

---

[1] As it must, the court assumes the well-pleaded factual allegations are true for the purpose of deciding the Estate's Motions to Dismiss.

Around August 3, 2022, Scott J. Harrington ("Mr. Harrington") tragically leapt in front of a moving Metro-North train while it was in Cos Cob, Connecticut. Id. at ¶¶ 9, 58, 65. In doing so, Mr. Harrington struck, and broke through, the window of the engineer's cab. Id. at ¶¶ 58–59, 65–66. Mr. Raccio, a Metro-North engineer, was injured as a result; Ms. Bennett, a Metro-North conductor, who aided Mr. Raccio after he was injured by the incident, was also injured. Id. at ¶¶ 17, 59, 65–66.

### III.  STANDARD OF REVIEW

To withstand a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. Reviewing a motion to dismiss under Rule 12(b)(6), the court liberally construes the claims, accepts the factual allegations in a Complaint as true, and draws all reasonable inferences in the nonmovant's favor. See La Liberte v. Reid, 966 F.3d 79, 85 (2d Cir. 2020). However, the court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action." Iqbal, 556 U.S. at 678.

### IV.  DISCUSSION

####   A.  Motion to Dismiss Kawasaki's Crossclaims

#####     1.  Timeliness of the Motion

Kawasaki argues that the Estate's Motion to Dismiss its crossclaims is untimely pursuant to Rule 12(a)(1)(B), which requires a cross-defendant to respond to a crossclaim within twenty-one (21) days of the crossclaim being served. Kawasaki's

Opp'n at 2–3. The Estate's Motion, having been filed after this deadline, should, according to Kawasaki, be denied as untimely. See id.

The Second Circuit instructs that "the defense of failure to state a claim is not waivable." Patel v. Contemp. Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001). Even if the Estate's Motion is untimely, the court would simply construe it as a 12(c) motion. This approach "makes eminently good sense" because the "standard for granting a Rule 12(c) motion . . . is identical to that of a Rule 12(b)(6) motion[.]" Id. Accordingly, the court will consider the merits of the Estate's Motion, applying the standard of review already discussed above.

        2.      Contribution Crossclaim

According to the Estate, Kawasaki's crossclaim for contribution "is not cognizable at this time" under Connecticut law because Kawasaki has not yet been determined to be liable to the plaintiffs. Mem. Supp. Re: Kawasaki Crossclaims at 2–3. The Estate contends, therefore, that this crossclaim should be dismissed under Rule 12(b)(6).[2] Kawasaki responds that its contribution crossclaim is permitted under Rule 13(g) because the Rule permits contingent crossclaims for contribution. Kawasaki's Opp'n at 3. Kawasaki also contends that section 52-572o of the Connecticut General Statutes, which applies to actions for contribution, does not prohibit its crossclaim for contribution because the conditions set forth in that law apply only when an independent action for contribution is brought. See id. at 3–4.

---

[2] To the extent the Estate is claiming that Kawasaki's crossclaim for contribution is unripe, this argument implicates the court's subject matter jurisdiction under Rule 12(b)(1). Regardless of whether Rule 12(b)(1) or Rule 12(b)(6) applies, the court's Ruling as to the Motions now before it would be the same.

Rule 13(g) directs that a "crossclaim may include a claim that the coparty is or may be liable to the crossclaimant for all or part of a claim asserted in the action against the crossclaimant." The Second Circuit has interpreted the "is or may be liable" language, albeit as used in Rule 14(a), and concluded that a defendant may bring an action for contribution "even though the defendant's claim is purely inchoate—i.e., has not yet accrued under the governing substantive law." Andrulonis v. United States, 26 F.3d 1224, 1233 (2d Cir. 1994). This court relies on this analysis of the language at issue here to conclude that a contingent crossclaim may be brought under Rule 13(g). Several other courts in this District have adopted the same approach. E.g., Philadelphia Indem. Ins. Co. v. Enter. Builders, Inc., 520 F. Supp. 3d 156, 163 (D. Conn. 2021); Pouliot v. Paul Arpin Van Lines, Inc., 303 F. Supp. 2d 135, 138 (D. Conn. 2004).

Accordingly, Kawasaki may raise its contribution crossclaim now. The Estate's Motion is denied to the extent it seeks to have this crossclaim dismissed on the ground that it is inchoate.

### 3. Indemnification Crossclaim

The Estate moves the court to dismiss Kawasaki's crossclaim for indemnification. To survive a Motion to Dismiss, the facts alleged in the crossclaim must plausibly raise an inference that:

> (1) the party against whom the indemnification is sought was negligent; (2) that party's active negligence, rather than the defendant's own passive negligence, was the direct, immediate cause of the accident and the resulting injuries and death; (3) the other party was in control of the situation to the exclusion of the defendant seeking reimbursement; and (4) the defendant did not know of the other party's negligence, had no reason to anticipate it, and reasonably could rely on the other party not to be negligent.

Smith v. City of New Haven, 258 Conn. 56, 66 (2001). In deciding if this claim is adequately pled, the court must "consider [the] common-law indemnification claim

5

against the allegations raised in the complaint." Fifield v. S. Hill Ltd. P'ship, 20 F. Supp. 2d 366, 369 (D. Conn. 1998) (citing Cimino v. Yale University, 638 F.Supp. 952, 958 (D.Conn.1986)).

Kawasaki's crossclaim for indemnification is inadequate, according to the Estate, because it fails to sufficiently plead the second and third elements of its claim. Mem. Supp. Re: Kawasaki Crossclaims at 3–8. Kawasaki opposes these arguments. Kawasaki's Opp'n at 4–7.

### i.     Active Negligence

The Estate argues that Kawasaki's crossclaim for indemnification fails to allege that Mr. Harrington's negligence was active, or that Kawasaki's negligence was, at most, passive in contributing to the plaintiffs' alleged injuries. Mem. Supp. Re: Kawasaki Crossclaims at 4–6. The Estate argues that the pleadings fail to suggest Mr. Harrington's actions were anything more than passive negligence. Id. at 5. In fact, the Estate asserts that it was Kawasaki's negligence that was active because the defect in the window was the direct result of the plaintiffs' injuries. See id. at 5–6. Kawasaki counters that simply because the window broke does not mean that it was defective and suggests that the Estate confuses independent negligence with active negligence. Kawasaki Opp'n at 5–6. While Kawasaki concedes the Second Amended Complaint may suggest it was independently negligent, it maintains the allegations do not support the inference that it was actively negligent. Id. at 6. On the other hand, in Kawasaki's view, the pleadings suggest Mr. Harrington was actively negligent. Id. at 5.

"Primary, active negligence is the direct, immediate cause of the accident and the resulting injuries." O & G Indus., Inc. v. Aon Risk Servs. Ne., Inc., No. 3:12-CV-723 JCH, 2013 WL 4737342, at *5 (D. Conn. Aug. 30, 2013) (internal quotation marks

6

omitted). "Passive negligence", on the other hand, "is generally limited to constructive or technical fault, as where an owner of property is held liable for an injury on his property resulting from a dangerous condition caused by another working on his property." Id. (internal quotation marks omitted). "To allege the second element of an indemnification claim, a potential indemnitee must allege that the indemnitor was actively negligent and the indemnitee was merely passively negligent." Philadelphia Indem. Ins. Co., 2022 WL 3082984, at *2.

Two cases illustrate the differences between active and passive negligence. In Preferred Acc. Ins. Co. of N. Y. v. Musante, Berman & Steinberg Co., 133 Conn. 536 (Conn. 1947), a pedestrian fell into an opening in the sidewalk usually covered by a basement door. Id. at 536. The door had been left open by an employee of the defendant, a produce company, while the employee was making a delivery to the lessee. Id. at 537–38. The lessee was found negligent in a prior suit for failing to construct a barrier around, or post a warning about, the open basement door. Id. at 542. The insurance company of the lessee sought indemnification from the produce company. Id. at 541. The court denied the defendant's motion to dismiss the indemnification claim, concluding that the alleged facts adequately suggested that the produce company was actively negligent and the lessee was passively negligent. See id. at 542–44.

In Blitzer v. Barrett, No. 3:96CV2024 (AHN), 1997 U.S. Dist. LEXIS 24504, the plaintiff, a bicyclist, was injured by a motorist while both were using a road built and maintained by an organization. Id. at *2–*3. The bicyclist sued the motorist and organization, and the organization brought a crossclaim for indemnification against the

7

motorist.  Id. at *2–*4.  The court concluded that the organization had sufficiently pled its crossclaim, reasoning that, while the allegations might suggest the organization was negligent, "'personal independent negligence' [is] not equivalent to active or primary negligence."  Id. at *8 (quoting Kaplan v. Merberg Wrecking Corp., 152 Conn. 405, 415 (Conn. 1965)).

As in Preferred and Blitzer, the pleadings in the instant case plausibly raise an inference that Mr. Harrington was actively negligent by jumping in front of a moving train and that Kawasaki, like the lessee and organization in Preferred and Blitzer, respectively, was no more than passively negligent by constructing a railcar that contained a defect.

### ii.   Exclusive Control

The Estate argues that Kawasaki's indemnification crossclaim fails to plausibly allege that Mr. Harrington had exclusive control of the dangerous situation at issue.  Rather, it contends that Kawasaki had exclusive control of the situation because it was responsible for the assembly of the broken window.  Mem. Supp. Re: Kawasaki Crossclaims at 7–8.  Kawasaki frames the dangerous situation differently, arguing that it had no control over Mr. Harrington's decision to jump in front of a moving train.  Kawasaki Opp'n at 6–7.

Under Connecticut law, the party that has "control of the dangerous condition to the exclusion of the other negligent party" is considered "the direct and immediate cause of the accident."  Pellecchia v. Connecticut Light & Power Co., 139 Conn. App. 767, 777 (2012).  Ordinarily, the issue of exclusive control is an issue of fact for the jury to decide.  Id. at 775.  In Pellecchia, however, the court decided the issue as a matter of law because of "special circumstances", concluding that an emergency services

8

company that was responsible for warning a utility company of a downed powerline was not in exclusive control of the dangerous situation because only the utility company could shut off the powerline.  Id. at 775–76.

In the instant case, the court perceives no special circumstances suggesting that it should decide the question of exclusive control as a matter of law.  Instead, the pleadings allege Mr. Harrington jumped in front of a moving train and, as a result, entered through a window, thereby injuring the plaintiffs.  See, supra, part II.  These allegations give rise to an inference that, by doing so, he was exclusively in control of the situation that caused injury to the plaintiffs.

In sum, having rejected the arguments raised by the Estate in its Motion to Dismiss Kawasaki's crossclaims, the court denies the Motion.

B.     Motion to Dismiss Faiveley's Third-Party Crossclaims

In the instant Motion, the Estate reproduces the arguments it raises in its Motion to Dismiss Kawasaki's crossclaims.  Compare Mem. Supp. Re: Kawasaki Crossclaims at 2–8, with Mem. Supp. Re: Faiveley Crossclaims at 3–8.  Faiveley opposes the Estate's Motion, asserting that it may bring a crossclaim for contribution under Rule 13(g), and maintaining that the pleadings allege facts sufficient to make a claim for indemnification.  Faiveley Opp'n at 3–6.  Faiveley's arguments are similar to those raised by Kawasaki's Opposition.  Compare id. at 3–6, with Kawasaki Opp'n at 3–7.

The court, having already considered similar arguments in denying the Estate's Motion to Dismiss Kawasaki's crossclaims, see, supra, part IV.A.2–3, denies the Estate's Motion to Dismiss Faiveley's crossclaims for the reasons already discussed.[3]

---

[3] Though the Estate does not raise the argument, the court is aware that other courts within this Circuit have expressed divergent views about whether, consistent with Rule 14(a)(2)(B), a third-party

9

**V.     CONCLUSION**

For the reasons stated above, the court denies the Estate's Motion to Dismiss Kawasaki's crossclaims (Doc. No. 85).  The court also denies the Estate's Motion to Dismiss Faiveley's crossclaims (Doc. No. 101).

**SO ORDERED.**

Dated at New Haven, Connecticut this 21st day of November 2024.

 /s/ Janet C. Hall
Janet C. Hall
United States District Judge

---

defendant may bring a crossclaim against a defendant at another level of the litigation.  See Luyster v. Textron, Inc., 266 F.R.D. 54, 58 (S.D.N.Y. 2010) (summarizing cases).  At least one treatise suggests a third-party may bring such a crossclaim.  6 Wright, Miller & Kane, Fed. Prac. & Proc. Civ. § 1456 (3d ed.).  The topic has garnered some attention from academics.  E.g., Arthur F. Greenbaum, Jacks or Better to Open: Procedural Limitations on Co-Party and Third-Party Claims, 74 Minn. L. Rev. 507, 527 (1990); John D. Bessler, Note, Defining "Co-Party" Within Federal Rule of Civil Procedure 13(g): Are Cross-Claims Between Original Defendants and Third-Party Defendants Allowable?, 66 Ind. L.J. 549 (1991).  Considering that the parties have not briefed the issue, the court will not reach a decision on the question at this stage of the litigation.